1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

12 | CAYETANO MELENDEZ,

**Plaintiff,**

13

14 | v.

15 | HUNT, ET AL.,

16 | **Defendants.**

CASE NO. 1:13-cv-00279 AWI-BAM (PC)

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

17
18

**I. Introduction**

Plaintiff Cayetano Melendez is an inmate in the custody of the California Department of Corrections and Rehabilitation. He has stated claims against "(1) Defendant Hunt for excessive force, inhumane conditions of confinement and deliberate indifference to serious medical needs in violation of the Eighth Amendment; and (2) Defendants Arr[e]ola[1] and Cruz for failure to intervene in violation of the Eighth Amendment." Doc. 16 at 1. Discovery was conducted in this action. The period for such discovery concluded on July 19, 2015. After several extensions of time, Defendants filed a motion for summary judgment on December 11, 2015, contending that

---

[1] Plaintiff erroneously named Defendant L. Arreola as L. "Arriola." The Court will refer to Defendant Arreola using the correct spelling of his name.

(1) Plaintiff's claim is barred by the doctrine of res judicata, (2) Defendants' conduct did not violate the Eighth Amendment, and (3) Defendants are entitled to qualified immunity. Plaintiff filed an opposition. Defendants filed a reply. For the following reasons, Defendant's motion for summary judgment will be denied in part and granted in part.

## II. Background

**A. Plaintiff's Position**

Plaintiff has Type 2 diabetes and is wheelchair bound. Deposition of Cayetano Melendez ("Melendez Depo.") at 11:24-12:1. In 2012, Plaintiff required (and continues to require) dialysis treatments three times per week for his diabetes. Melendez Depo. at 14:22-15:1. Each treatment lasts roughly three to four hours. Declaration of K. Satterfield ("Satterfield Decl.") at ¶ 11; Declaration of J. Mamauag ("Mamauag Decl.") at ¶ 9; Melendez Depo. at 15:2-4, 47:4-13. On the morning of June 27, 2012, at approximately 9:30 a.m.,[2] Correctional Officer ("CO") Howard transported Plaintiff from C-Facility housing to the hemodialysis unit at the Correctional Treatment Center ("CTC") of Kern Valley State Prison ("KSVP") for his dialysis treatment. Defendants' Statement of Undisputed Facts ("DSUF") at ¶ 1; Melendez Depo. at 24:6-14. During the transportation, Plaintiff was secured with waist restraints that connected to his wrists. Melendez Depo. at 25:6-20. When Plaintiff arrived at the CTC he was moved from his wheelchair to a recumbent chair for dialysis treatment. Melendez Depo. at 34:17-23. During the dialysis treatment, Kelly Satterfield, a nurse at the CTC, brought Plaintiff two pieces of diabetic candy and a glass of water to allow Plaintiff to maintain his blood sugar level through the duration of the dialysis treatment. Melendez Depo. at 30:3-17, 31:1-7.

Plaintiff testified at his deposition that during his dialysis at the CTC he overheard an argument between CO Hunt and Inmate Brown, another inmate that received treatment at the CTC. Melendez Depo. at 25:24-26:9. Plaintiff testified that CO Hunt was agitated after the interaction with Inmate brown and took it out on Plaintiff. Melendez Depo. at 45:3-6. Specifically, after that argument concluded, CO Hunt noticed that Plaintiff did not have leg restraints on. Melendez Depo. at 26:10-13. Plaintiff testified that Nurse Satterfield informed CO

---

[2] Defendants contend that Plaintiff arrived at 10:00 a.m. Declaration of K. Hunt ("Hunt Decl.") at Exh. A.

Hunt that Plaintiff had a medical accommodation—a "chrono"—as a result of his edema that required that he not be placed in leg shackles. Melendez Depo. at 26:12-13. Plaintiff testified that, in spite of Nurse Satterfield's admonition, CO Hunt retrieved leg shackles and placed them on Plaintiff "real tight" approximately ten minutes before completion of his dialysis treatment.[3] Melendez Depo. at 27:14-22, 33:3-14; *see* Melendez Depo. at 36:9-10 (Nurse Satterfield told CO Hunt that Plaintiff had a chrono regarding not wearing leg irons. CO Hunt "said he didn't care.") Thereafter, Nurse Satterfield commented to CO Hunt that the ankle restraints appeared to her to be too tight. *See* Melendez Depo. at 37:10-12. In response, CO Hunt said to Plaintiff, "I've got something for you," and apparently tightened the ankle restraints. *See* Melendez Depo. at 37:15-38:2.[4] CO Areola and CO Cruz overheard CO Hunt say "I've got something for you" while standing at the officer's desk near the dialysis room. *See* Melendez Depo. at 41:24-42:3. Plaintiff did not cry out react to the placement or tightening of the restraints. Melendez Depo. at 40:6-10. The shackles left cuts in Plaintiff's legs that ultimately left scars. Melendez Depo. at 40:11-12, 41:6-8.

Plaintiff testified that his treatment on June 27, 2012, took four hours and ended at either 4:30 p.m. or 1:30 p.m. Melendez Depo. at 47:7-25. When the dialysis treatment ended, Nurse Satterfield helped Plaintiff from the dialysis chair back to his wheelchair. Melendez Depo. at 41:14-16. While Plaintiff was in the dialysis room, either CO Hunt or CO Areola made a statement to Plaintiff to the effect of "let's see how long you last?"—referring to Defendants' intent to place Plaintiff in a small holding cage in an attempt to trigger a claustrophobic or diabetic reaction. Melendez Depo. at 42:8-13, 44:23-25. CO Arreola and CO Cruz laughed in response to placing Plaintiff in the cage. Melendez Depo. at 41:24-42:13. Immediately thereafter, CO Hunt took Plaintiff from the dialysis room, past five empty holding tanks, to a holding cage adjacent to the dialysis room. *See* Melendez Depo. at 42:14-24, 45:18-23. The holding tanks that Plaintiff passed were each large enough to fit approximately 20 to 25 inmates. *See* Melendez

---

[3] Plaintiff also testified that the restraints were not put on until after he was taken off of the dialysis chair. Melendez Depo. at 41:14-16.

[4] Plaintiff also testified that the "I got something for you" comment was a reference to placing Plaintiff in a holding cage rather that a holding tank. Melendez Depo. at 44:19-22.

1  Depo. at 43:21-23. The holding cage was small enough that only one person could fit inside and

2  was made of a steel mesh-like material that Plaintiff could see through. Melendez Depo. at 48:1-

3  19. Plaintiff's was able to fit inside the cage with his wheelchair. Melendez Depo. at 44:1-3.

4        Plaintiff was to remain until CO Hunt contacted another correctional officer to transport

5  Plaintiff from the CTC. *See* Melendez Depo. at 50:2-51:16. Plaintiff overheard CO Hunt tell CO

6  Cruz and CO Areola not to call for an escort for Plaintiff right away. Melendez Depo. at 53:5-10.

7        At some point after being put in the cage, Plaintiff began yelling. Melendez Depo. at

8  51:25-52:6. Within an hour of Plaintiff having been put in the cage, Associate Warden ("AW")

9  E. Blanco came to the cage. Melendez Depo. at 51:19:24. AW Blanco asked why Plaintiff was in

10 the cage and Plaintiff responded that CO Hunt had placed him there. Melendez Depo. at 58:1-4.

11 Then Plaintiff showed AW Blanco the cuts on his ankles from the restraints. Melendez Depo. at

12 54:8-10, 58:4-5. By the time AW Blanco arrived, Plaintiff's socks were soiled with blood, he had

13 bled on the floor of the holding cage, and had bled onto his wheelchair. Melendez Depo. at 57:1-

14 25. AW Blanco asked Plaintiff why he was shaking and Plaintiff responded that he was diabetic

15 and needed sugar. Melendez Depo. at 54:12-13.

16       Plaintiff believes that AW Blanco then admonished CO Hunt. Melendez Depo. at 58:16-

17 59:23, 60:4-6. However, Plaintiff could not see the officer's desk where CO Hunt and AW

18 Blanco spoke and could not hear the conversation. Melendez Depo. at 58:22-59:23. Rather,

19 Plaintiff believes that CO Hunt (and possibly the other correctional officers) were admonished

20 because AW Blanco was upset at Plaintiff's treatment and because of the expressions of CO

21 Hunt, CO Cruz, and CO Areola looked "like they got chewed out by the warden." 58:16-21,

22 64:20-24.

23       Shortly thereafter, Senior Nurse Cabrera came by and observed Plaintiff in the cage.

24 Melendez Depo. at 60:20-61:3. Nurse Cabrera left to get Plaintiff sugar to treat his diabetic

25 symptoms. Melendez Depo. at 63:25-63:4. However, before Nurse Cabrera returned, CO

26 Howard retrieved Plaintiff from the cage and had taken him to his housing unit. Melendez Depo.

27

28

at 59:25, 63:2-4, 67:20-68:2, 70:2-5.[5] Plaintiff continued to bleed from his ankles on the return trip. Melendez Depo. at 70:9-11. When Plaintiff arrived at his cell (or outside of the C-block housing facility) the ankle restraints were removed and he wrapped his ankles with a T-shirt. Melendez Depo. at 70:12-16; *cf.* Melendez Depo. at 70:2-5, 73:21-23.[6] Thereafter, Plaintiff was taken to the clinic where Nurse German treated his injuries. Every day for the next eight days Plaintiff was treated with gauze and antibiotic cream. Melendez Depo. at 80:12-24. Ultimately, the cuts in Plaintiff's ankles left scars. Plaintiff also indicates that he was given antibiotics and a higher dose of pain medication as a result of this incident. Melendez Depo. at 81:21-83:2.

**B. Defendants' Position**

On June 27, 2012, Plaintiff was taken to the hemodialysis unit by CO Howard. On that date, CO Hunt was assigned to the CTC and posted at the officer's desk in front of the KVSP dialysis treatment room. Hunt Decl. at ¶¶ 2-3. Plaintiff arrived at the CTC at 10:00 a.m. to begin his treatment. Hunt Decl. ¶ 13, Ex. A. At that time, waist restraints were removed and Plaintiff was placed into a dialysis chair by dialysis staff. Melendez Depo. at 34:24-35:5. CO Hunt re-applied waist restraints around Plaintiff's waist. Hunt Decl. at ¶ 16. Plaintiff demanded that CO Hunt loosen the restraints and CO Hunt refused, indicating that doing so would be a security risk. Hunt Decl. at ¶ 16. Plaintiff became upset and threatened to have CO Hunt written up. Hunt Decl. at ¶ 16. CO Hunt told Plaintiff "to calm down, and Plaintiff replied 'You put on that green jump suit on and think you're Superman, but you're nothing but a bitch.'" Hunt Decl. at ¶ 16. CO Hunt "asked Plaintiff to repeat himself and he said, 'I said you're a little bitch.'" Hunt Decl.

---

[5] Counsel for the Attorney General suggested to Plaintiff in his deposition that the detention in the holding cage lasted five hours after Plaintiff indicated that he arrived at dialysis at around 10:00 am. did not believe that he left dialysis until 1:30 p.m. or 4:30 p.m.. It appears to the Court that Plaintiff's description is much more consistent with Plaintiff having been at the CTC for a total of five hours and the holding cage for approximately one hour. For instance, he describes AW Blanco seeing him within the first hour in the cage, Nurse Cabrera coming shortly thereafter to check on him, Nurse Cabrera leaving and indicating that she would return with a glucose tube, and Plaintiff having been taken out of the cage before Nurse Cabrera returned. Plaintiff's description suggests a relatively quick removal from the holding cage after AW Blanco arrived. Similarly, Plaintiff's complaint describes Plaintiff's holding cage detention slightly longer than an hour. Doc. 15 at ¶¶ 22-27.

[6] Plaintiff also suggests that when he arrived at his cell that Nurse German was present. Melendez Depo. at 70:12-16. However, Plaintiff later corrected that he did not see Nurse German until he was taken to the clinic by the floor officer. Melendez Depo. at 72:16-22. Plaintiff also later corrected that he was not taken to his cell; CO Howard passed his custody to the floor officer who made the decision to have Plaintiff taken to the clinic. Melendez Depo. at 73:7-74:14.

at ¶ 16. CO Hunt reported the interaction to Sergeant J.R. Marta. Hunt Decl. at ¶ 16. Sergeant Marta checked the restraints and determined that they were properly applied. Hunt Decl. at ¶ 16.

Defendant Hunt had no verbal altercation with inmate Brown in the dialysis unit. Hunt Decl. at ¶ 22.

Nurse Satterfield indicated that she did not give inmates candy during dialysis treatment but that she did have sugar tablets on hand for diabetic inmates. Satterfield Decl. at ¶ 9. She does not recall whether she gave sugar tablets or water to Plaintiff during his treatment. Satterfield Decl. at ¶¶ 9-10.

CO Hunt was aware that Plaintiff was diabetic and that Plaintiff had a wheelchair chrono. Hunt Decl. at ¶¶ 15, 19. However, CO Hunt was unaware of any ankle restraint chrono. Hunt Decl. at ¶ 19. Defendants acknowledge that Defendant Hunt then placed a single ankle restrain was placed around Plaintiff's right ankle at the beginning of the dialysis treatment. *See* Hunt Decl. at ¶¶ 17-19. Defendants contend that the ankle restraint was standard for all inmates— including diabetic inmates—and was designed to prevent inmates from different housing blocks from comingling in the CTC. Hunt Decl. at ¶ 17-18. Defendants deny that a second restraint was placed on Plaintiff's leg and that any restraint was put on tightly. Hunt Decl. at ¶¶ 19, 23. Defendants also deny that CO Hunt made any to the effect of "I got something for you," when putting on Plaintiff's leg restraint. Hunt Decl. at ¶ 23; *see* Declaration of M. Rodriguez[7] ("Rodriguez Decl.") at ¶ 4; Arreola Decl. at ¶ 5.

Plaintiff's dialysis treatment concluded at 1:40 p.m. Hunt Decl. at ¶ 32, Exh. A. After Plaintiff's dialysis treatment, the ankle restraint was removed and Plaintiff was placed in an ADA holding cell adjacent to the dialysis treatment unit until someone could transport Plaintiff to his cell. Hunt Decl. at ¶¶ 25, 27. CO Hunt does not remember if Plaintiff's ankle was bleeding. Hunt Decl. at ¶ 28. CO Hunt normally would have placed Plaintiff in a holding tank but those tanks were full of inmates from other yards. Hunt Decl. at ¶ 27. CO Hunt and CO Arreola deny making any statement indicating that they intended to place Plaintiff into a holding cage to trigger a claustrophobic reaction. Hunt Decl. at ¶ 24; Arreola Decl. at ¶¶ 5, 9.

---

[7] CO Cruz changed her name from Cruz to Rodriguez in December of 2014. Rodriguez Decl. at ¶ 1.

While in the ADA holding cage, Plaintiff began shouting loudly. Declaration of CO Arreola ("Arreola Decl.") at ¶ 6; Declaration of CO Rodriguez ("Rodriguez Decl.") at ¶ 5. Hunt Decl. at ¶ 29; Declaration of Inmate D. Leach ("Leach Decl") at ¶ 10. Within about five minutes, AW Blanco walked by and Plaintiff stopped him. Decl. of AW Blanco ("Blanco Decl.") at ¶ 5. AW Blanco indicates that Plaintiff's "complexion was normal and that he was not sweating or shaking." Blanco Decl. at ¶ 6. Plaintiff was not shouting and did not appear to be in distress. Blanco Decl. at ¶ 6. Blanco did not admonish any correctional officer in response to Plaintiff's situation. Blanco Decl. at ¶ 8.

Plaintiff was released from the holding cage at 2:30 p.m. Hunt Decl. at ¶ 32, Exh. A.

Plaintiff was in his cell at 4:30 for count. Declaration of B. Hancock ("Hancock Decl.") at ¶ 9. Plaintiff could not have seen Nurse German on June 27, 2012, after he was released from the holding cage because her shift ended at 2:00 p.m. German Decl. at ¶¶ 5-6.

On June 28, 2012, Nurse German examined an injury on Plaintiff's right ankle. German Decl. at ¶ 7. She completed a CDCR Form 7219, detailing the injury. German Decl. at ¶ 7. She found "an abrasion or scratch" on his right ankle and dried blood. German Decl. at ¶ 7. She further noted Plaintiff's statement that on June 27, 2012, custody staff had placed leg chains on his ankles and scraped his right leg. German Decl. at ¶ 7. Plaintiff was not referred for additional medical care regarding the injury and received no additional medical care regarding the injury. German Decl. at ¶ 9-11.

## C. Plaintiff's Habeas Petition[8]

---

[8] Defendants ask the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of a number of documents, all constituting court records. Plaintiff has not opposed the request. In a preclusion context, a federal court may "[t]ake judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes." *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir.2005); *see also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir.2002) (taking judicial notice of a California Court of Appeal opinion "and the briefs filed in that proceeding and in the trial proceeding and in the trial court" for the purposes of ruling on issue preclusion).

The Court finds that the materials accompanying Defendants' request for judicial notice are encompassed by the rule articulated in *Manufactured Homes Communities, Inc.* All of the exhibits covered by Defendants' Request for Judicial Notice are Court documents. As such, the accuracy of their contents cannot be reasonably questioned and Plaintiff does not question their authenticity. See United States v. Ritchie, 342 F.3d 903, 909 (9th Cir.2003). Accordingly, the Court will take judicial notice of the state court records that resulted in the dismissal of Plaintiff's state habeas petitions.

On July 12, 2012, Plaintiff filed a habeas petition involving the subject matter of this action in the Superior Court of California for the County of Kern. Request for Judicial Notice, Doc. 42-2 at 5. Plaintiff named the Warden of KSVP, CO Hunt, CO Arreola, and CO Cruz as defendants. Plaintiff sought injunctive relief in that action. Doc. 42-2 at 13. The facts set forth in Plaintiff's habeas petition differ in the following ways:

First, Plaintiff contended that the incident described herein was perpetrated in retaliation for his filing of an administrative appeal against KVSP staff.  Doc. 42-2 at 7, 12. Second, Plaintiff indicated that he only suffered a cut on his right leg as a result of the leg restraints. Doc. 42-2 at 7, 12. Third, Plaintiff attributes an additional statement to CO Hunt; Plaintiff contends that CO Hunt, while placing Plaintiff in the holding cage, told Plaintiff that Plaintiff would not receive mouth-to-mouth resuscitation if needed. Doc. 42-2 at 15. Fourth, Plaintiff did not mention his claustrophobia. *See* Doc. 44-2. Instead, he indicated that the holding cage was inappropriate because it was not designed for diabetic inmates. Doc. 44-2 at 15.  Fifth and finally, Plaintiff alleged that CO Arreola brandished a knife at Plaintiff in an attempt to dissuade him from reporting the incident. Doc. 44-2 at 8.

Otherwise, the habeas petition and plaintiff's instant complaint are largely factually identical.

On August 16, 2012, Plaintiff's petition for writ of habeas corpus was denied. Doc. 42-2 at 27-28. The court offered three reasons for the denial. First, Plaintiff did not exhaust his administrative remedies. Second, Plaintiff did not suffer an Eighth Amendment violation. And third, a more appropriate remedy would be a civil rights action rather than a petition for writ of habeas corpus.

Plaintiff did not appeal the denial of his habeas petition. Melendez Depo. at 87:13-18.

### III. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving

party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c)(1)(A).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1436 (9th Cir.1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at p. 587 (citation omitted).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

1   factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*,

2   602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898, 902 (9th Cir.1987).

3                          **IV. Discussion**

4          Defendants present three grounds for summary judgment. First, Defendants argue that

5   Plaintiff's claim is precluded because he filed a petition for writ of habeas corpus in the Kern

6   County Superior Court involving the alleged conduct underlying this action. Second, Defendants

7   argue that no Eighth Amendment violation took place. Third, Defendants argue that even if the

8   Eighth Amendment was violated, they are entitled to qualified immunity.

9   **A.  Claim Preclusion**

10         Plaintiff previously litigated a habeas action arising out of the same set of facts at issue

11  here. Plaintiff's habeas petition was denied in a reasoned opinion. Part of the basis for the denial

12  was on the merits of the Eighth Amendment claim. However, the denial was also based in part

13  upon a failure to exhaust and the court's finding that a § 1983 action was the more appropriate

14  vehicle for the claims at issue.

15         The Ninth Circuit recently examined whether denial of a habeas petition can have a

16  preclusive effect on subsequent civil litigation. *Gonzales v. California Dept. of Corr.*, 739 F.3d

17  1226, 1231 (9th Cir. 2014). The *Gonzales* court began by setting out the statutory basis for

18  federal courts giving preclusive effect to state-court judgments; "the Federal Full Faith and

19  Credit statute, 28 U.S.C. § 1738, requires federal courts to 'give to a state-court judgment the

20  same preclusive effect as would be given that judgment under the law of the State in which the

21  judgment was rendered.'" *Gonzales*, 739 F.3d at 1230 (quoting *Migra v. Warren City Sch. Dist.

22  Bod. of Educ.*, 465 U.S. 75, 81 (1984)). The court explained that California claim preclusion

23  rules apply when the first action is a California habeas proceeding. *Gonzales*, 739 F.3d at 1230;

24  *see Migra*, 465 U.S. at 81. It outlined the general contours of when a California judgment has

25  preclusive effect on a subsequent litigation:

26         California's general rule is that "[a] valid final judgment on the merits in favor of
           a defendant serves as a complete bar to further litigation on the same cause of
27         action." *Slater v. Blackwood*, 15 Cal.3d 791 [] (1975). "It is clearly established
           that a party may not split up a single cause of action and make it the basis of
28

separate suits." *Wulfjen v. Dolton*, 24 Cal.2d 891 [] (1944).… [In sum,] all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.

*Gonzales*, 739 F.3d at 1231-1232. There is no *per se* rule that a habeas petition cannot operate as a bar to later civil litigation on the same topic; although a summary denial of a habeas petition has no preclusive effect, a reasoned denial of a habeas petition can have claim-preclusive effect. *Gonzales*, 739 F.3d at 1231. In like fashion, the fact that a plaintiff may seek different relief in a habeas action than in a later action does not impact the analysis. *Gonzales*, 739 F.3d at 1232.

The court gives a California habeas judgment preclusive effect on a later federal civil suit when (1) the habeas judgment is a final judgment on the merits, (2) there is identity or privity of the parties in the two suits, and (3) both actions involve the same cause of action or "primary right." *Gonzales*, 739 F.3d at 1232-1233; *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904 (2002). Since *Gonzales*, courts in this district have consistently applied claim preclusion jurisprudence to conclude that alleged Eighth Amendment violations decided by a state court on the merits in a habeas petition based on conduct of prison staff has a preclusive effect on any later § 1983 action involving the same incident. *E.g., Claiborne v. Zhang*, 2015 WL 1787781, *3 (E.D. Cal. Apr. 20, 2015); *see Bryant v. Shaefer*, 2015 WL 4615952, *7 (E.D. Cal. July 30, 2015) (dismissing as *res judicata* a second action alleging a § 1983 claim brought on the same facts against a different defendant).

1. Same Cause of Action or Primary Right

"California has consistently applied the 'primary rights' theory, under which the invasion of one primary right gives rise to single cause of action." *Slater v. Blackwood*, 15 Cal.3d 791, 795 (1975). "'[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" *Gonzales*, 739 F.3d at 1233 (quoting *Eichman v. Fotomat Corp.*, 147 Cal.App.3d 1170 (Cal. Ct. App. 1983)); *accord McLain v. Apodaca*, 793 F.2d 1031, 1033–34 (9th Cir.1986). Stated differently, "A claim is the 'same claim' if it is derived from the same 'primary right,' which is 'the right to be free from a particular injury, regardless of the legal theory on which

liability for the injury is based.'" *MHC Financing Ltd. Partnership v. City of San Rafael*, 714 F.3d 1118, 1125–26 (9th Cir. 2013) (citation omitted).

As Defendants correctly note, Plaintiff's prior state habeas petition raised nearly identical issues of excessive force, inhumane conditions of confinement, and deliberate indifference to serious medical needs as those raised in the instant action.[9] Plaintiff alleged the same application of ankle restraints and injury resulting therefrom and the same inappropriate placement in a holding cage by the same defendants. Plaintiff's habeas petition raised the same claims.

2. Identity or Privity

Plaintiff named all three Defendants as defendants in the habeas petition. The parties to this action were parties in the first action.

3. Final Judgment on the Merits

"A judgment is on the merits for purposes of res judicata if the substance of the claim is tried and determined." *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 77 (2000) (citation and internal quotation marks omitted). The state court articulated three bases for denial of Plaintiff's habeas petition: (1) failure to exhaust, (2) a § 1983 claim is the more appropriate procedural vehicle, and (3) no Eighth Amendment violation occurred. The first two bases are not on the merits; the third basis is. *See Heath v. Cleary*, 708 F.2d 1376, 1380 n.4 (9th Cir. 1983) (noting that a prior state court decision for failure to exhaust administrative remedies cannot be a basis for res judicata). Generally, where there are alternative bases for dismissal of a first action, one on the merits and the other on a procedural basis, res judicata may be applied based on the merits-based determination. *See Gilliam v. Magistrado*, 2015 WL 5023033, *1 n.3 (E.D. Cal. Aug. 24, 2015) (citing *Steward v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002). However, where a court dismisses on alternative bases, one on the merits and the other not, and the "court's non-merits ruling was for lack of personal jurisdiction," the court is "depriv[ed] … of the

---

[9] Plaintiff's Second Amended Complaint also presents a claim for "[f]ailure to [i]ntercede." Doc. 15 at 7-8. Plaintiff's habeas petition is not clear as to whether CO Cruz and CO Arreola were directly involved in the alleged Eighth Amendment violations or if those correctional officers simply watched the violation without taking action to prevent it. In either case, the claims at issue in the habeas petition clearly arise out of the same interaction that the claims in the present action relate to.

authority to rule on the merits." *Ruiz v. Snohomish Cnty. Pub. Util. Dist*. No. 1, 824 F.3d 1161, 1165-1166 (9th Cir. 2016); *accord In re Alexander P.*, 1 Cal.App.5th 1262, 1276-1277 (Cal. Ct. App. 2016) (quoting *People v. American Contractors Indemnity Co*, 33 Cal.4th 653, 661 (2004) ("Judgments that are void for lack of jurisdiction in the fundamental sense, i.e., of the subject matter and the parties have no preclusive effect.") (internal quotation marks omitted)).  In sum, where the court makes a finding that it lacks jurisdiction, even where a court purports to also make a merits-based determination, that judgment is of no res judicata effect.

Defendants do not discuss the California court's finding that Plaintiff did not exhaust his administrative remedies. Instead, they focus only on the merits-based determination. The portion of the state court's dismissal for failure to exhaust was based on *In re Dexter*, 25 Cal.3d 921, 925 (1979) and *In re Muszalski*, 52 Cal.App.3d 500, 508 (Cal. Ct. App. 1975). Those cases stand for the proposition that a habeas petitioner will not be afforded judicial relief unless he has exhausted available administrative remedies. *In re Dexter*, 25 Cal. 3d at 925; *In re Muszalski*, 52 Cal.App.3d at 508. A habeas petitioner failure to comply with the prison's administrative remedies is a jurisdictional failure that "foreclose[s] any consideration of the merits of the petition…." *Turner v. Director of CDC*, 2014 WL 4458885, *3 (E.D. Cal. Sept. 20, 2014); *accord Dean v. Diaz*, 2014 WL 1275706, *5 (E.D. Cal. Mar. 27, 2014) (collecting cases); *McCann v. Hill*, 2011 WL 6750056 at *2 (E.D. Cal. Dec. 22, 2011) (A California court's "citation to *In re Dexter* ... signifies that the court did not reach the merits of petitioner's claims because he had failed to exhaust his administrative remedies."); *see Belletti v. Montgomery* 2015 WL 1321548,* 8 (S.D. Cal. Mar 18, 2015); *Wright v. State*, 122 Cal.App.4th 659, 665-666 (Cal. Ct. App. 2004) ("The exhaustion requirement is jurisdictional: a court cannot hear a case before a litigant exhausts administrative remedies.")

Because the Kern County Superior Court's dismissal was based in part upon a failure to exhaust administrative remedies—a jurisdictional requirement—the judgment was not on its merits and cannot serve as a basis for res judicata.

///

///

**B. Eighth Amendment Violations**

Plaintiff has alleged "cognizable claims against: (1) Defendant Hunt for excessive force, inhumane conditions of confinement and deliberate indifference to serious medical needs in violation of the Eighth Amendment; and (2) Defendants Arr[e]ola and Cruz for failure to intervene in violation of the Eighth Amendment." Doc. 16 at 1.

1. Excessive Force

Defendants do not address Plaintiff's excessive force claim. It survives Defendants' motion for summary judgment. *See, e.g., Ford v. Wildey*, 2015 WL 1637794, *8-9 (E.D. Cal. Apr. 13, 2015) (denying a defendant's motion for summary judgment where the plaintiff alleged that the defendant correctional officer intentionally and maliciously overtightened handcuffs); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("[T]he propriety of a particular use of force is generally an issue for the jury.")

2. Deliberate Indifference to Serious Medical Needs

Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim arises from CO Hunt placing Plaintiff in a holding cage, where he remained for approximately one hour without "water or sugar/glucose," and ignoring Plaintiff's cries for help. *See* Doc 15 at ¶¶ 37-38. Defendants move for summary judgment as to that claim.

While the Eighth Amendment of the United States Constitution entitles plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In order to show a serious medical need Plaintiff must demonstrate that failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).

Defendants note that "deliberate indifference may occur where government officials fail to respond to a diabetic inmate's medical needs." Doc. 42-5 at 16 (citing *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419-420 (9th Cir. 2003). Effectively, Defendants concede that diabetes is

a serious medical condition, the non-treatment of which could result in significant injury or the unnecessary and wanton infliction of pain.

However, Defendants contend that the evidence does not support a finding that CO Hunt was deliberately indifferent to that serious medical need. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122. Mere indifference and negligence are inadequate to violate the Eighth Amendment. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06.)

All parties knew that Plaintiff was diabetic. Melendez Depo. at 16:11-17:2; Hunt Decl. at ¶ 15; *see* Arreola Decl. at ¶ 4; Rodriguez Decl. at ¶ 3. CO Hunt was aware that a diabetic inmate might require glucose, candy, or insulin. *See* Hunt Decl. at ¶ 20. It is CO Hunt's belief that Plaintiff would not have been permitted to carry insulin or candy with him and that it would have had to have been administered by a nurse if medically necessary. Hunt Decl. at ¶ 20.

Although the reason for the placement in a holding cage is disputed,[10] it is agreed that Plaintiff was placed in a holding cage rather than a holding tank. It is also agreed that Plaintiff began shouting while in holding cage. Plaintiff alleges that he yelled "because [his] legs started bleeding more" and because he was "having a bad reaction." Melendez Depo. at 41:2-4, 49:13-14. Inmate Leach reports having heard Plaintiff shouting while Leach was in a holding tank and Plaintiff was in a holding cage. Leach Decl. at ¶ 10. Leach heard Plaintiff shout that his blood sugar was crashing and that he did not belong in the holding cage. Leach Decl. at ¶ 10.

---

[10] Plaintiff testifies that CO Hunt placed him in the cage, not to trigger a diabetic reaction, but because CO Hunt knew that Plaintiff was claustrophobic and intended to cause a claustrophobic response. CO Hunt indicates that he placed Plaintiff in a holding cage because the holding tanks all contained inmates from other cell blocks who were not permitted to intermingle with Plaintiff.

1  Defendants report having understood Plaintiff's shouts to be his protests to being placed in a

2  holding cell. Rodriguez Decl. at ¶ 6; Arreola Decl. at ¶ 6; *see also* Hunt Decl. at ¶ 29 ("I do not

3  recall … the substance of what Plaintiff was yelling about.") None of the correctional officers

4  report having responded to Plaintiff's cries. *See* Rodriguez Decl.; Arreola Decl.; Hunt Decl. In

5  fact, Plaintiff contends that Defendants began laughing in response to his cries. Melendez Decl.

6  at 41:4-5. Defendant all deny having laughed at Plaintiff's cries.

7          Based on this record, Defendants were aware of Plaintiff's medical condition and for the

8  serious potential for harm if he was refused treatment. *See Egebergh v. Nicholson,* 272 F.3d 925

9  927–28 (7th Cir. 2001) (concluding that because one officer "knew that an insulin-dependent

10  diabetic needs regular insulin injections" and the other officer knew "that diabetes is potentially

11  fatal," the plaintiff could avoid summary judgment on her deliberate indifference claim). They

12  were unaware of whether he had received candy or glucose necessary to treat his condition.

13  Further, evidence was submitted to suggest that Plaintiff shouted for help—by Plaintiff's

14  account, for almost an hour—before the AW Blanco happened by and responded to his cries. In

15  sum, in the light most favorable to Plaintiff, evidence has been presented from which a jury

16  could find that Plaintiff had a serious medical need, that CO Hunt knew that Plaintiff could not

17  self-treat his medical need, that Plaintiff shouted for help, and that CO Hunt and the other

18  Defendants ignored those cries for help.[11] A jury could find a purposeful failure to respond to

19  Plaintiff's possible serious medical need.

20          The Court must next look to whether a jury could find that CO Hunt's indifference

21  caused Plaintiff any damage. Defendants contend that Plaintiff did not complain of or seek

22  medical care for any diabetic injury in the weeks following the incident "no evidence exists

23  showing that plaintiff suffered a diabetic injury." Doc. 42-5 at 18, 21; DSUF at ¶¶ 47-51.

24  Plaintiff's complaint is telling on this point. It reads: "the lack of water or sugar/glucose ingested

25  by MELENDEZ placed him in danger of experiencing a diabetes-induced coma." Doc. 15 at ¶

26  37. Although he did not slip into a coma, Plaintiff indicates that "about an hour in to being in the

27

28  [11] The evidence suggesting that CO Hunt intentionally placed ankle restraints on plaintiff that were too tight in an effort to injure plaintiff also tends to weigh in favor of a finding that he intentionally disregarded a substantial risk of injury to Plaintiff.

case" he began to exhibit symptoms of a diabetic reaction, including shaking, sweating, and a rapid heartbeat. Melendez Depo. at ¶ 12-22. As the Ninth Circuit explained in *Jett*, "[a] prisoner need not show his harm was substantial…." *Jett*, 439 F.3d at 1096; *see McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.") The injury Plaintiff testifies that he suffered is sufficient to satisfy the harm requirement. *See Cooper v. Sely*, 2012 WL 653832, *2 (E.D. Cal. Feb. 28, 2012) ("[S]weating, panic[], insatiable thirst, elevated heart rate, [and] trembling," as a result of a diabetic reaction can satisfy the harm prong of deliberate indifference).

The court cannot conclude that there is an absence of evidence in support of Plaintiff's claim of deliberate indifference to a serious medical need. Nor can it conclude, as Defendants suggest, that Plaintiff's story is so "blatantly contradicted by the record that no reasonable jury could believe it." Doc. 42-5 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).[12]

Defendants are not entitled to summary judgment on this claim.

3. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to Plaintiff. *Farmer*, 511 U.S. at 847; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

---

[12] The present action presents a situation far different from *Scott* where a video of the incident at issue entirely discredited the plaintiff's version of the events. *Scott*, 550 U.S. at 779-781. This Court is presented with two primary versions of the incident based on the different recollections of the parties. Plaintiff's version is not demonstrably false.

However, insofar as Plaintiff actually intended to suggest that he was detained in a holding cage for five hours, which does not appear to the Court to be Plaintiff's allegation, that suggestion is contradicted by the entire record, different from the allegations of his complaint, and not believable by a jury.

The routine discomfort in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry. Only those deprivations denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson*, 503 U.S. at 9 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. at 832. "The circumstances, nature, and duration of a deprivation of one of these necessities must be considered in determining whether a constitutional violation has occurred. The more basic the need, the shorter the time it can be withheld." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *see Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (considering the length of time the prisoner must go without basic needs in evaluating an Eighth Amendment conditions of confinement claim).

Plaintiff testified at his deposition that Nurse Satterfield told another nurse that Plaintiff was claustrophobic and CO Hunt overheard. Nurse Satterfield's declaration is clear that she has no recollection of whether or not she told CO Hunt about Plaintiff's claustrophobia. For purposes of resolving Defendants' motion, the Court will presume that Plaintiff actually is claustrophobic and that CO Hunt actually knew that Plaintiff is claustrophobic.

It is unclear whether placement of an inmate in a holding cell despite his or her claustrophobia creates an objectively serious danger. *See Goetsch v. Berge*, 3 Fed.Appx. 551, 553 (7th Cir. 2001) ("[G]iven that confinement of prisoners in cells of limited size is inherent in imprisonment," the court refused find an excessive risk to health and safety "outside of an extreme case.") Even if placement of a claustrophobic inmate in a small cell could constitute deprivation of a basic need, a short duration of the detention weighs against such a finding. *See Hopowit*, 682 F.3d at 1258.

Even assuming that an objectively serious danger existed, the record is devoid of any evidence indicating that any defendant was aware that placement of a claustrophobic inmate in a holding cage might pose a serious risk of injury to that inmate or that Plaintiff suffered any

claustrophobic injury as a result of his approximately hour-long detention in the holding cage. The subjective prong of the Eighth Amendment inquiry is unmet here.

Taking all evidence in the light most favorable to Plaintiff, his Eighth Amendment claim for inhumane conditions of confinement fails. Defendants are entitled to summary judgment on that claim.

4. Failure to Intercede

Plaintiff testified CO Cruz and Arreola laughed when CO Hunt suggested placing Plaintiff in a holding cage. Plaintiff further testified that he cried for help due to the diabetic reaction that he was experiencing, and CO Cruz and CO Arreola ignored his cries. CO Cruz and CO Arreola both acknowledge having heard Plaintiff's screams but do not recall the content, other than that it seemed that Plaintiff was objecting to being placed in a holding cage. Neither CO Cruz nor CO Arreola responded to Plaintiff's screams.

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see DeShaney v. Winnebago County*, 489 U.S. 189, 199-200 (989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). This responsibility requires prison officials to protect prisoners from injury by other prisoners, *Farmer*, 511 U.S. at 833-834, and from other correctional officers, *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). A prison official can only be held responsible for a failure to intercede if he or she had a realistic opportunity to intercede and elected not to do so. *See Cunningham*, 229 F.3d at 1289.

Taking all of the facts in the light most favorable to Plaintiff, CO Cruz and CO Arreola not only failed to prevent CO Hunt's mistreatment of Plaintiff, but encouraged it. Further, both CO Cruz and CO Arreola heard Plaintiff's cries for help and ignored them. The evidence submitted is sufficient to overcome Defendants' motion for summary judgment on this ground.

///

///

1   **C. Qualified Immunity**

2       Qualified immunity shields government officials "from liability for civil damages insofar

3   as their conduct does not violate clearly established statutory or constitutional rights of which a

4   reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

5   protection of qualified immunity applies regardless of whether the government official makes an

6   error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law

7   and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation

8   omitted). The doctrine of qualified immunity protects "all but the plainly incompetent or those

9   who knowingly violate the law...." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

10      The qualified immunity inquiry has two prongs: (1) "whether the facts that a plaintiff has

11  ... shown ... make out a violation of a constitutional right," and (2) "whether the right at issue

12  was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*,

13  610 F.3d 546, 550 (9th Cir.2010) (quoting *Pearson*, 555 U.S. at 232). "The relevant, dispositive

14  inquiry in determining whether a right is clearly established is whether it would be clear to a

15  reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*,

16  533 U.S. 194, 202 (2001). This inquiry is wholly objective and is undertaken in light of the

17  specific factual circumstances of the case. *Saucier*, 533 U.S. at 201. "The principles of qualified

18  immunity shield an officer from personal liability when an officer reasonably believes that his or

19  her conduct complies with the law." *Pearson*, 555 U.S. at 245, 129 S.Ct. 808. Where there is a

20  dispute in the underlying evidence, qualified immunity cannot be granted. *Wilkins v. City of*

21  *Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified

22  immunity depends on the resolution of disputed issues of fact in their favor, and against the non-

23  moving party, summary judgment is not appropriate.")

24      As to the first prong of the qualified immunity inquiry, the Court identified three

25  constitutional violations that survive summary judgment. The first prong is satisfied.

26      As to the excessive force claim, Plaintiff's version of the events details CO Hunt

27  intentionally placing leg shackles on plaintiff so tight that they cut the skin. At the time of the

28  events in question, it was well-established that overly tight handcuffing can constitute excessive

1    force under the Eighth Amendment. *E.g., Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir.1993)

2    (affirming the denial of qualified immunity on an excessive force claim where defendants

3    unnecessarily fastened handcuffs so tightly around plaintiff's wrists that they caused him pain

4    and left bruises and refused to loosen the handcuffs after plaintiff's complaints of pain). A

5    reasonable correctional officer would have understood under the circumstances that intentionally

6    overtightening and maintaining leg shackles on an inmate such that they break the skin and the

7    inmate continues to bleed is a constitutional violation. Summary judgment on qualified immunity

8    grounds will be denied as to Plaintiff's excessive force claim.

9         As to the deliberate indifference to a serious medical need claim, before the 2012 incident

10   that gave rise to Plaintiff's claims, it was clearly established that officers could not intentionally

11   deny or delay access to medical care. *Estelle,* 429 U.S. at 104. Specifically, in *Lolli*—where the

12   evidence existed that the officers were aware of the inmate's extreme behavior, his obviously

13   sickly appearance, and his explicit statements that he needed food because he was a diabetic—

14   found defendants were not entitled to qualified immunity because their conduct ran afoul of the

15   clearly established authority that an officer could not deny or delay access to medical care. *Lolli*,

16   351 F.3d at 421-422.[13] A reasonable officer in the situation would have known that denying a

17   diabetic inmate medical treatment is a constitutional violation. Summary judgment on qualified

18   immunity grounds will be denied as to Plaintiff's deliberate indifference to medical needs claim.

19        Finally, as to Plaintiff's failure to intercede claim, CO Arreola and CO Cruz both note in

20   their declarations that "laughing or making jokes about an inmate's serious medical needs, or

21   ignoring an inmate's cries in distress [are] … violation[s] of CDCR policy" for which each

22   "could have been formally disciplined." Arreola Decl. at ¶ 9; Rodriguez Decl. at ¶ 9. In addition

23   to being a violation of CDCR policy, at the time of the event it was clearly established that

24   failing to intercede (where a realistic ability to do so existed) to prevent another correctional

25   officer from committing a constitutional violation was itself a constitutional violation.

26

---

27   [13] Defendants' attempt to distinguish from *Lolli* is unavailing.  Although the officers in *Lolli* engaged in excessive force using batons and broke several of the plaintiff's ribs, the Court separated out the claim for excessive force

28   from the deliberate indifference to medical needs claim. The medical indifference claim—although shorter in duration in this action—is otherwise strikingly similar.

1    *Cunningham*, 229 F.3d at 1289-1290. A reasonable correctional officer would have understood

2    under the circumstances that allowing a fellow officer to deny medical treatment is a

3    constitutional violation. . Summary judgment on qualified immunity grounds will be denied as to

4    Plaintiff's failure to intercede claim.

5                                        **V. Order**

6          Based on the foregoing, IT IS HEREBY ORDERED that:

7    1.  Defendants' motion for summary judgment is GRANTED in part as follows:

8          a.  In favor of Defendant Hunt as to Plaintiff's second cause of action for inhumane

9              conditions of confinement in violation of the Eighth Amendment;

10   2.  Defendants' motion for summary judgment is DENIED in part as follows:

11         a.  Defendant Hunt is not entitled to summary judgment on Plaintiff's first cause of

12             action for excessive force or third cause of action for deliberate indifference to a

13             serious medical need;

14         b.  Defendant Cruz and Arreola are not entitled to summary judgment on Plaintiff's

15             fourth cause of action for failure to intercede;

16         c.  Defendants are not entitled to summary judgment based on qualified immunity.

17

18   IT IS SO ORDERED.

19   Dated:   September 20, 2016          _____

20                                          SENIOR  DISTRICT  JUDGE

21

22

23

24

25

26

27

28